[Cite as *State v. Whatley*, 2017-Ohio-7739.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-647 |
| | | (C.P.C. No. 15CR-6349) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Malik J. Whatley, | : | |
| Defendant-Appellant. | : | |

———————————

D E C I S I O N

Rendered on September 21, 2017

———————————

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief**: *Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.

———————————

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Malik J. Whatley, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following his entry of a guilty plea to one count of involuntary manslaughter with a firearm specification.

{¶ 2} On February 16, 2016, appellant was indicted in Franklin C.P. No. 15CR-6349 on one count of murder, in violation of R.C. 2903.02, one count of involuntary manslaughter, in violation of R.C. 2903.04, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Counts 1 and 2 each carried a three-year firearm specification under R.C. 2941.145 and a repeat violent offender specification

under R.C. 2941.149.  The indictment arose out of the death of a 17-year-old male, J.M., on December 16, 2015.

{¶ 3}   On July 21, 2016, appellant entered a guilty plea to one count of involuntary manslaughter with a firearm specification.  At the time of the offense in case No. 15CR-6349, appellant was under community control sanctions for an aggravated robbery conviction in Franklin C.P. No. 14CR-5361.

{¶ 4}   On August 15, 2016, the trial court held a sentencing hearing in case No. 15CR-6349, as well as a hearing on revocation of community control in case No. 14CR-5361.  During the hearing, the prosecutor recited the following facts and circumstances of the events surrounding the death of J.M. in case No. 15CR-6349.

{¶ 5}   On December 16, 2015, appellant and the victim, J.M., "were at a friend's residence.  The [appellant] was * * * staying there, * * * in violation of his community control * * * because he was supposed to be staying with his mother."  (Aug. 15, 2016 Tr. at 4.)  J.M. "was 17 years of age" at the time of the incident.  (Aug. 15, 2016 Tr. at 3.)  Appellant and the victim were "in the basement.  There were a number of other people in the residence, although none of which admitted seeing the incident itself."  (Aug. 15, 2016 Tr. at 4.)  Appellant and J.M. "were using a phone to video chat with two girls who were sisters, and they were essentially mugging and messing around on the phone."  (Aug. 15, 2016 Tr. at 4-5.)  Based on a statement by appellant, "they were playing around with guns.  The victim had picked up a gun.  [Appellant] then picked up a gun as well."  (Aug. 15, 2016 Tr. at 6.)  Appellant indicated "the guns had been under a hat on a dresser in the basement, the hat belonging to [appellant]."  (Aug. 15, 2016 Tr. at 6-7.)

{¶ 6}   According to appellant's statement, "the victim picked up what he described as an XD 40 off the dresser."  (Aug. 15, 2016 Tr. at 7.)  Appellant "then said, 'I picked up the other one.  I picked up the 380.'  He said he was clicking the trigger.  He said he was pulling the trigger.  It was making a clicking noise.  He said, 'But I guess it was on safety.  I then put the clip into it.' "  (Aug. 15, 2016 Tr. at 7.)  Appellant "indicated he didn't realize, as he described, there was one in the head, or in the chamber of the firearm.  He then turned off the safety, and while the gun was pointed in the direction of [J.M.], pulled the trigger."  (Aug. 15, 2016 Tr. at 7.)  Appellant fired one shot "directly in the direction of

[J.M.]," striking the victim "inside of the chest." (Aug. 15, 2016 Tr. at 7.) J.M. "died as a result of a single gunshot wound." (Aug. 15, 2016 Tr. at 7.)

{¶ 7} The prosecutor stated that "nobody in [the] house was cooperative." (Aug. 15, 2016 Tr. at 16.) When police officers arrived, "at least three people had left the scene. They were later detained by the police." (Aug. 15, 2016 Tr. at 16.) The first officer on the scene observed two individuals on the first floor. The officer "came in saying, '[w]ho's shot? Who's shot?' They said nothing." (Aug. 15, 2016 Tr. at 16.) The officer walked toward the basement and observed the victim "laying at the bottom of the stairs, there was nobody with him." (Aug. 15, 2016 Tr. at 16.) The officer went downstairs and "did find two people in the basement." (Aug. 15, 2016 Tr. at 17.) One individual was "sitting [o]n a bed, and one was coming out of a bedroom." (Aug. 15, 2016 Tr. at 17.) Appellant was one of the two individuals in the basement. After the officer questioned "the two people in the basement, one of them being [appellant], he finally said, 'I think he was just grazed.' " (Aug. 15, 2016 Tr. at 17.) J.M. was still alive at the time the first officer arrived.

{¶ 8} Police detectives subsequently interviewed appellant, who "insinuates somebody else came in the house and shot him. When they say, you're lying, he says, I'm not lying, I'm telling you what I know." (Aug. 15, 2016 Tr. at 19.) After detectives informed him that the victim had died, appellant "ultimately gives some indication of his involvement in the shooting." (Aug. 15, 2016 Tr. at 19.) The prosecutor noted that police officers subsequently found two weapons in a car belonging to appellant's girlfriend.

{¶ 9} The prosecutor also related the following facts and circumstances with respect to appellant's previous conviction in the revocation case:

> In terms of the disability, [appellant] has a prior conviction for aggravated robbery * * * for using a firearm in the commission of a robbery on a prior occasion.
>
> That incident happened on August 13th of 2014 when the defendant and two other young men approached a 14-year-old boy at 12:30 in the morning. [Appellant] placed a gun in his back and put his arm around his neck while another person demanded property from him. They stole a dollar, his Jordan shoes, and his iPhone 4.

> [Appellant] was detained later in the area after that incident
> [and] denied any knowledge of the robbery to the police.

(Aug. 15, 2016 Tr. at 9-10.)

{¶ 10} The prosecutor further noted that the trial court, at the time it imposed community control sanctions for the aggravated robbery conviction, "promised him nine years if he violated the terms of his community control." (Aug. 15, 2016 Tr. at 3.)

{¶ 11} By entry filed August 16, 2016, the trial court sentenced appellant in case No. 15CR-6349 to eight years incarceration on the involuntary manslaughter count, consecutive to a three-year sentence on the firearm specification, and consecutive to a nine-year sentence imposed on revocation of community control in case No. 14CR-5361.

{¶ 12} On appeal, appellant sets forth the following assignment of error for this court's review:

> The trial court committed reversible error in its imposition of
> sentence.

{¶ 13} Under his single assignment of error, appellant challenges the trial court's imposition of sentence as erroneous. Appellant notes that both the state and defense counsel indicated during the proceedings that the shooting was not deliberate. Appellant further notes that the prosecution, although arguing he had committed the "worst form" of the offense of involuntary manslaughter, also told the court the "state is not suggesting that the defendant purposely caused the death of [J.M.]." (Aug. 15, 2016 Tr. at 12; 6.)

{¶ 14} R.C. 2953.08(G)(2) states as follows:

> The court hearing an appeal under division (A), (B), or (C) of
> this section shall review the record, including the findings
> underlying the sentence or modification given by the
> sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify
> a sentence that is appealed under this section or may vacate
> the sentence and remand the matter to the sentencing court
> for resentencing. The appellate court's standard for review is
> not whether the sentencing court abused its discretion. The
> appellate court may take any action authorized by this
> division if it clearly and convincingly finds either of the
> following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶ 15} In interpreting the above provisions, the Supreme Court of Ohio has held that R.C. 2953.08(G)(2) "allows an appellate court to increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law and/or (2) unsupported by the record." *State v. McGowan,* 147 Ohio St.3d 166, 2016-Ohio-2971, ¶ 1, citing *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 7. The Supreme Court has further held that "[c]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Marcum* at ¶ 22, quoting *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 16} This court, subsequent to *Marcum,* has held that a felony sentence "is not clearly and convincingly contrary to law when a trial court considers the principles and purposes of sentencing contained in R.C. 2929.11 and the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Haddad,* 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 19, citing *State v. Gore,* 10th Dist. No. 15AP-686, 2016-Ohio-7667, ¶ 8.

{¶ 17} As noted above, appellant argues that the shooting was not deliberate, and challenges the prosecutor's statement that he committed the worst form of the offense. Appellant contends that, under the facts and circumstances of the case, the sentence imposed by the trial court was excessive.

{¶ 18} In its sentencing entry, the trial court indicated it had "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12." Under Ohio law, "a trial court's statement in its sentencing journal entry that it considered the required statutory factors is sufficient to fulfill a trial court's obligations under R.C. 2929.11 and 2929.12." *State v. Fresenko,* 8th Dist. No. 103473, 2016-Ohio-4958, ¶ 12. Additionally, the court stated in the entry that it had "weighed the

factors set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14." The entry further stated that the court notified appellant he would be subject to five years of post-release control and of the consequences for violation of post-release control. The sentence imposed by the trial court also fell within the permissible statutory range.

{¶ 19} While appellant challenges the prosecution's position that he committed the worst form of the offense, we agree with the state's contention that the trial court ultimately determined he did not commit the worst form of the offense. A review of the sentencing transcript indicates that the trial court, while acknowledging the prosecution's argument that "[i]t is the worst form of the offense in the sense that there was a firearm used when you should not have had one," further stated: "In another sense, I disagree with the state and agree with [defense counsel's argument] that it's not the worst form of the offense." (Aug. 15, 2016 Tr. at 46-47.) Specifically, the court observed, "[t]here are other ways to commit involuntary manslaughter that can be every bit as heinous or awful as what happened here." (Aug. 15, 2016 Tr. at 47.) As also noted by the state, despite the prosecutor's request at the sentencing hearing, the trial court did not impose a maximum sentence in case No. 15CR-6349.

{¶ 20} On review, the record on appeal indicates the trial court considered the appropriate statutory factors, and we cannot clearly and convincingly conclude that the sentence imposed by the trial court was unsupported by the record or contrary to law. Accordingly, appellant's assignment of error is not well-taken.

{¶ 21} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____